# CHARLESTON.

## COGAR *v.* BURNS LUMBER CO.

Submitted February 8, 1899—Decided April 8, 1899.

1. CONTRACTS— *Delivery—Breach—Injunction—Record.*

Where a contract for the sale of logs has been made by a party at an agreed price, which logs have never been delivered to the party to whom they were contracted, and suit has been instituted upon said contract to recover the contract price from the party to whom they were sold, and the cause for the nondelivery of the logs is attributable to the fact that the title of the plaintiff was defective, and he was enjoined from selling and delivering said logs, the defendant may show such injunction proceedings by producing a certified copy of the record.   (p 259).

2  SALES—*Chattels—Warranty.*

A sale of personal chattels implies an affirmation of the vendor that the chattell is his, and therefore he warrants the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold. (p. 260).

Error to Circuit Court, Webster County.

Action by Thomas Cogar against the Burns Lumber Company.   Judgment for plaintiff and defendant brings error.

*Reversed.*

MOLLOHAN & McCLINTIC and W. G. MATHEWS, for plaintiff in error.

E. H. MORTON and WATTS & ASHBY, for defendant in error.

ENGLISH, JUDGE:

This was an action commenced by agreement before J. S. Cutlip, a justice of the peace of Webster County, in which Thomas Cogar was plaintiff and the Burns Lumber

Company, a corporation, was defendant, which suit was predicated upon an account against the defendant for two hundred and niney-eight dollars and ten cents, same being balance claimed to be due on a contract for the delivery of lumber, which account was for ninety-seven thousand six hundred and eighty-four feet of lumber, amounting to five hundred and eighty-six dollars and ten cents, subject to a credit of two hundred and eighty-eight dollars, leaving a balance of two hundred and ninety-eight dollars and ten cents. The contract upon which said claim was based was dated December 17, 1891, by which it was agreed that in consideration of twenty-five dollars, in hand paid, the said Thomas Cogar should sell to the Burns Lumber Company what poplar logs he had then cut—about two hundred and fifty—at the following prices: For all logs twenty-four inches and up, six dollars per thousand; and all below, down to twenty inches, at five dollars per thousand. Said Cogar was to deliver said logs cut into the main Elk, at Addison. The Burns Lumber Company was to pay one-half when the logs were measured, and the rest on delivery at Addison; and Cogar further agreed that any other timber he had or could get thereafter would be delivered, as in the above contract, next year or later. The defendant appeared and pleaded *non assumpsit* and offset, and filed a special plea in writing, setting up said contract, and claiming that long before the logs were delivered as stipulated one C. K. Lord instituted in the circuit court of the United States for the district of West Virginia a suit in ejectment against the plaintiff and the defendant and others, claiming title in himself to the land from which the timber and logs so purchased by defendant from plaintiff had been and were to be cut; and that said Lord filed his bill praying for the appointment of a receiver, and the granting of an injunction against all the parties, and particularly the parties to this action, to restrain and inhibit the removing of any timber or logs cut from the land claimed by Cogar, or theretofore cut, and remaining on said land, or removed therefrom to the Black Fork of Elk river, or other places; and that such proceedings were had in said court that the injunction was granted, and all of said timber and logs were taken by a receiver appointed

by the court, and the brand of said court placed thereon; that said logs had remained in the possession of said receiver·from that time, and that both plaintiff and defendant have been restrained and inhibited from removing, or in any way interfering with, the logs. The plea also avers that Lord's claim was to the same lands and timber sold by plaintiff to defendant, and that his claim is superior to plaintiff's claim, and that by reason of the bill, injunction, and order·appointing a receiver defendant could by no lawful means have obtained possession of said logs, and they have become wholly rotten and worthless; that Cogar never owned said logs, and was aware of. the superiority of Lord's title, but represented himself as being the true owner, and by such false represenations induced the defendant to pay him two hundred and eighty-nine dollars and thirty cents thereon; and prays judgment. The case was heard before the justice on said pleading, and judgment rendered in favor of the plaintiff against the defendant for two hundred and ninety-three dollars and eighty cents and costs, was appealed to the circuit court, and heard upon the same pleadings, submitted to a jury, and resulted in a verdict for the plaintiff for two hundred and ninety-seven dollars and twenty-six cents. The defendant moved to set aside the verdict of the jury, and grant a new trial,—First, because the verdict was against the law and the evidence; and, secondly, because of several matters excepted to by the defendant on the trial; third, because the court erred in its demeanor towards, and remarks of and to, counsel for defendant in the presence of the jury,— which motion was overruled, and judgment rendered upon the verdict, and this writ of error was applied for and obtained.

The defense relied on under this plea was that both Thomas Cogar and the defendant had been made defendants in a certain suit in equity instituted in the circuit court of the United States for the district of West Virginia by said Charles K. Lord, and that both the plaintiff, Thomas Cogar, and the defendant had been enjoined from cutting, removing, or selling, or interfering in any manner with, the timber and logs mentioned in the contract of sale from Cogar to the defendant. In support of its contention that

by reason of the injunction and proceedings in said suit in the United States court the plaintiff had been unable to deliver the logs, or comply with his contract, and, as a consequence, defendant had not received the logs, and was not liable to pay for them, the defendant sought to introduce a certified copy of the bill and the decree granting the injunction restraining the defendants therein named from cutting and removing the logs and timber from the land described in the bill, and appointing a receiver, therein named, and requiring him to take into his possession all the logs cut by defendants, or by their authority, on said land, and to hold the same subject to the order of the court; also of the decree directing the receiver to make sale of the logs upon the terms therein prescribed,—to the introduction of which documents plaintiff objected, and the court sustained the objection, and refused to admit said papers in evidence, because it was stated to the court by plaintiff's counsel, and not controverted by defendant's counsel, that the parties to this action were not parties to said suit in the United States court; but the court did look at the papers handed him by defendant's counsel. To counteract this statement of plaintiff's counsel, it appeared that Cogar was one of the defendants, and plaintiff testifies, in answer to the question "whether or not there was on the 3d of February, 1892, or about that time, an ejectment suit instituted in the circuit court of the United States against you to try title to this land from which the timber was cut that you sold to the Burns Lumber Co., by C. K. Lord," answered, "And Camden, he sued me along about that time,—some time,—as well as I remember; him and some other parties; several of them." This witness was then asked to look at a paper which purported to be an injunction from the judge of the United States, and state whether or not a copy of it was served upon him, and the time it was so served. This was objected to, and ruled out by the court, and witness was not permitted to answer whether the lumber he was to have delivered to Burns was taken possession of in that suit. This witness was also asked, "Did they, or not, enjoin you from removing or disposing of any timber you had sold and agreed to deliver to Burns?" This was objected to, and the court remarked,

"The best evidence would be the record of the injunction." The defendants introduced G. M. Burns as a witness, who was asked, "What, if anything, was said, at the time this contract was made, by yourself or Mr. Cogar, about the title to the logs?" and anwsered, "I don't think there was anything said, until after the injunction was served on me, about the title.." He was then asked, "Have vou a copv of the injunction that was served on you?" and answered, "It is in the papers." The defendant then offered the bill, decree, and orders in the case of C. K. Lord against the Pardee & Curtin Lumber Company, in evidence, which were objected to by plaintiff, and ruled out by the court as inadmissible. Now, while it may be true that the Burns Lumber Company was not a party defendant to said proceeding in the United States court, yet it appears that the injunction was served on Burns, the vice president and agent of the Burns Lumber Company, as shown by his testimony; and, it appearing that the plaintiff, Cogar, was a party to said injunction proceedings in the United States court, and that it was important and material for the defendant to show that he did not receive the logs under said contract, Burns was allowed to state that he did not receive any of the logs, but was not allowed to explain why, which he could have done, and, I think, ought to have been permitetd to do, by introducing the record of the proceedings in the United States court, and showing that Cogar was not only enjoined from delivering the logs cut, but that they were placed in the hands of a receiver, and directed to be sold; and, if this was brought about by Cogar's defect of title (it appears from his statement that he afterwards compromised the case), this documentary evidence was surely material and important, and the defendant was injured by its rejection. Benjamin on Sales (section 639) thus states the law: "A sale of personal chattels implies an affirmation of the vendor that the chattel is his, and therefore he warrants the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership, but only to transfer such interest as he might have in the chattel sold." My conclusion is that the circuit court erred in excluding said documentary evi-

dence from the jury. The judgment complained of is therefore reversed, the verdict set aside, and a new trial awarded.

*Reversed,*